Colonel Cyrus Sears, a brother, and the person named as executor in the paper-writing purporting to be the last will and testament or Arminda S. Nicholson, deceased, late of the village of Lakewood, Cuyahoga county, Ohio, on the 3d day of May, 1904, formally propounded in this court a certain paper-writing, dated at Lakewood, Ohio, on the 6th day of dune, 1903, as the last will and testament of Mrs. Arminda S. Nicholson. The application states that Mrs. Nicholson was a resident of the village of Lakewood, and departed this life, weaving no husband, on the 30th day of April, 1904, and leaving surviving her as her' direct heirs and next of kin, 'John Sears, a brother, of Sandusky, Ohio; Benjamin Sears, a brother, of Bucyrus, Ohio; and Cyrus Sears, a brother, of Harpster, Ohio.
It is proper to say, at the outset, that Mr. Cyrus Sears, a. very venerable, worthy, and intelligent citizen of Harpster, Ohio, while formally propounding the paper, does not urge the court to probate the paper as the last will, but rather appears in court as counsel for himself and others, and resists the probate and establishment of said paper as the last will, of Mrs. Nicholson. It became necessary for some one interested to introduce the matter by formal application, and Mr. Cyrus Sears did so, being named in the paper as executor.
The paper-writing itself is exhibited in court, and profert is made of it. The office and value of the exhibition of a paper-writing purporting to be a will, as evidence of its existence, and the fact of its execution, becomes perfectly apparent. If the will is lost or spoilated, the statute prescribes a special method and procedure for its probate, which is entirely unnecessary where the paper-writing itself can be produced in court in full, ample, and complete form, and is thus exhibited to the inspection of the court. When the question of the genuineness and authenticity of a writing is in question, the fact of the existence and exhibition of such paper is of clear evidential value.
*191 As already stated, Cyrus Sears and John Sears, two brothers, and next of kin, appear in court by counsel, and challenge the: regularity of the execution of the propounded paper-writing.. Mr. R. V. Sears, an attorney in Crawford county, Ohio, appears, as I understand it, for Mr. Benjamin Sears, and joins in the propounding of the will; and other able counsel representing-various legatees appear and have been heard.
It is due and proper for the court to state that it has been very profoundly interested in the exceedingly able and resourceful efforts of learned counsel on this application, and has received the compliment and great benefit of very exhaustive written briefs, besides the oral argument.
The questions involved in the case are not very complex or numerous. The whole matter resolves itself into the question of whether the paper-writing propounded was duly, legally and regularly subscribed or acknowledged by the testatrix, and. properly, legally and regularly attested and subscribed by the attesting witnesses. The attesting witnesses, whose testimony has; been taken at some length in support of the will, were Mr. J. W.. Southern and Mrs. Julia K. Southern, his wife, of Lakewood, Ohio, neighbors and quite intimate friends of the testatrix, Mrs.. Arminda S. Nicholson. As the court views the matter, it will not be necessary to discuss, at any length, the testimony offered. There is no serious dispute about the testimony, as it. is all a matter of record, and is not very lengthy.
The court deems it proper, in the first place, in making this, brief statement of its opinion, to state a few general facts and circumstances which may have some bearing upon the real questions at issue. Mrs. Nicholson was a widow. She had resided for many years previous to her death in the village of Lakewood, and was well known as a lady of high character, intelligence, and of a charitable and religious disposition. She had no children, and was seized and possessed of an estate of considerable value, amounting- to $150,000 to $200,000, as is stated by counsel, and not disputed. It is proper to say that the court is not thoroughly advised on this subject. The testimony did not go into the extent of the estate any further than it was admitted in argument. She had drawn, herself, three papers pur *192 porting to be wills, and two before the one now offered had been witnessed and subscribed by the same persons who are the subscribing witnesses to this paper-writing. It may not be out of place, in passing, to say that Mrs. Nicholson assumed to act upon her own counsel in framing and drafting these papers. They were emphatically holograph wills. It does not appear that she sought any professional advice whatever, and it is proven that the paper-writing presented, so far as it is written with a pen, is all in her handwriting, except the signatures and place of residence of the attesting witnesses. The paper contains twenty and more paragraphs or items. On the first page, and under the word “Third,” it is evident that in the physical construction of this paper, a piece of paper, ruled and very similar in all respects to the body of the paper, has been put on to the face of the sheet, by mucilage or other adhesive substance, and that underneath this paper there was originally 'written other words, which are entirely covered and obscured by this “rider.” The words written on this piece of attached paper are as follows:
“The land I own lying between Lake Avenue and the Lake, I want sold, and ten thousand dollars of the money given to the Eliza Jennings Home, to be added to the endowment fund of that institution. The remainder divided among brother Benjamin’s children.”
In passing, it should be stated that it is claimed that this change in the physical construction of the document, made by the superincumbent piece of paper with the writing on it, is not proven to have been made before the pretended execution and attestation of the instrument as a will, and should not, therefore, be probated because of this fact. The court is of the opinion -that the point made on the will in this respect may be disposed of in a few words. There is no testimony bearing upon the question as to when, how, and for what purpose this change was made in the original construction of the paper. The words that I have quoted are proven to be all in the handwriting of Mrs. Nicholson, and it is so framed into the will, as to what goes before, and what follows, that the literary construction is complete, and there is nothing in it that, on inspection, would *193 lead one to suppose that it was placed on the will, or the change so made, after the will was drafted, and intended to be subscribed, attested, and made complete. There is, therefore, as bearing upon this question of the regularity of this change, the presumption which obtains in all similar cases, that the paper, when it was intended to be made final by subscription and attestation, was in the condition that it is now found. If the handwriting had been the handwriting of some other person; if it had been written with a different pen or ink, or if there were any internal evidences that it was probably done at some other time than at the time, or previous to, the execution, the presumption might be rebutted, or testimony might be adduced that would tend to rebut the presumption; but the presumption of regularity; the presumption that the change was made prior to the attempted execution, is strengthened and fortified by the fact that it was all done by the hand of Mrs. Nicholson, the testatrix. The court, therefore, can not find that the third paragraph of said will, which is placed upon the paper, and which is made to adhere to the first sheet, must be ignored in the probate of the will, and the will restored to its original condition, and probated, if probated at all, without the interpolation upon the adhering paper. Such a conclusion would not be warranted by other presumptions of law which, in my opinion, are rendered rational, and are strengthened by the circumstances, and the known intelligence and care of the testatrix.
The establishment of two other propositions is claimed to be absolutely fatal to the probate of this will as the last will and testament or Mrs. Arminda S. Nicholson.
1st. The paper-writing was not subscribed or signed by the testatrix in the presence of the attesting witnesses.
2d. The paper-writing was not acknowledged as her last will and testament by the testatrix, nor was her signature acknowledged before and in the presence of the attesting witnesses, as the law requires.
These are the two rallying points in the entire discussion on the subject of the probate of this paper. It is strenuously urged that this paper-writing is not duly and legally executed and attested as a will, upon the force and strength Of the decision *194 of the Supreme Court of Ohio, in the case of Keyl et al v. Feuchter et al, 56 Ohio St., 424. While there are numerous other authorities and principles of law cited by opposing counsel in their able briefs, so far as the Ohio law is concerned it is the sound and rational intent and meaning of this decision which must determine largely the result here. It is insisted that this decision of the Supreme Court, rendered in 1897, is a clear, conclusive, and final determination of the invalidity of this instrument, by reason of the failure in its proper execution.
■ Fortunately, the report of the case preserves and contains a somewhat dramatic history of the facts and circumstances underlying the decision of the court. The testator, on the day that he executed his will, as appears from the bill of exceptions in the case, which is fully set out in the report, called at the place of employment of one Charles Wilhelm, who seems to have been, from his language, an uneducated person, and employed in some humble capacity in a packing house, and asked Wilhelm to go with him and witness “a paper.” They went into a business block, and to the office of Thomas C. Brandon, a justice of the peace. What occurred there is fully set out. The witness Wilhelm said that the testator said nothing, except to ask him if he would go with him and sign “a paper.” It is perfectly evident, from the entire bill of exceptions, that Wilhelm did not have the slightest conception or intimation that he was subscribing and attesting a will. In fact, he had an affirmative understanding the other way, as will be found om page 427 of the report. The question was asked: “Well, did you sign your name when his name was not there; is that what you want us to understand?” “Yes, I signed my name and did not see his name at all. I thought I signed a lot that he sold, or something of that kind. ITe didn’t mention no will or nothing. It didn’t make no more impression on me or nothing; never thought he made a will.” The ease made in the bill of exceptions is a decidedly strong case against the will of John Feuchter, offered for probate, and the bill of exceptions is very clear that the witness Wilhelm did not exercise in the least that mental cognition which is necessary in a witness who attempts *195 to attest a will. There was a total absence of any impression, on his part, or mental conception of the operation or function of attestation. It is claimed, however, for this decision, that Section 5916 of the Revised Statutes of Ohio has been construed to mean that the acknowledgment made by the testator to the attesting witness, as provided in said section, must be:
1st. An acknowledgment of the will, or what is known, technically, as a publication of the will, to the attesting witnesses by the testator; and
2d. An acknowledgment of the “signature” of the testator in the presence of the attesting witnesses.
It must be admitted that the facts upon which this decision was based, show that the witness Wilhelm did not see the signature of the testator, which was appended to the will, nor was there any acknowledgment in the presence of this witness, either of the will or the subscription thereof by the testator. It appears to the court that the strength of the decision lies in this fact, that the luill itself was neither signed nor acknowledged in the presence of Wilhelm. There was such total absence of any publication of the will, or bringing to the knowledge of the attesting witness the transaction that was being enacted, that his conception was that it was not a will, but that it was a deed or transfer of some lot. It seems to me, therefore, that the facts in the ease in the 56th Ohio St., 424, must be kept in view, in undertaking to ascertain the meaning of the Supreme Court, and the correct interpretation of its decision. The court quotes the language of Section 5916 of the Revised Statutes before its amendment, allowing typewritten wills, as follows:
“Every last will and testament, except nuncupative wills hereinafter provided for, shall be in writing, and signed at the end thereof by the party making the same, or by some other person in his presence, and by his express direction, and shall be attested and subscribed by two or more competent witnesses, who saw the testator subscribe, or heard him acknowledge the same. ’ ’
And then follows this quotation on page 432 of the decision:
“By the testimony of the other witness, it was shown affirmatively that the alleged will was not executed and acknowl *196 edged in accordance with the statute, in that there was no acknowledgment by the maker, either of the paper as his will, or-of his signature thereto, in the presence of that subscribing witness.”
Now, the vital question here in the attempt to ascertain what the Supreme Court decided, if we, for the time being, but omit the exact wording of the syllabus, is whether the Supreme Court authorized the use of the disjunctive conjunction “and” in the sentence which I have now quoted, between the acknowledgment by the maker of the paper as his will, and of “his signature” thereto. Is it not, by plain literary construction, apparent that what the court mean to say is, that the acknowledgment by the testator of either the will itself, or of his “signature,” is a sufficient acknowledgment or publication of the will, as provided in Section 5916 of the Revised Statutes? The reporter of the decision who prepared the syllabus, or the judge who prepared the syllabus, it seems to me misconceived the exact meaning of the paragraph which I have now quoted on page 432 of this decision, which is the only part of the decision which affords any warrant for the syllabus. The very language of the statute itself, properly construed, independently of the decision of the Supreme Court in this ease, would seem to import clearly that what is meant by the acknowledgment by the testator, is tantamount and equivalent to what is well understood by the publication of the will in the presence of the witnesses. “Shall \ be attested and subscribed in the presence of such party by two or more competent witnesses, who saw the testator subscribe, or heard him acknowledge the same.” Heard him acknowledge what? What is the substantive of the act of attestation and subscription by' the two competent attesting witnesses, as indicated by this statute ? WThy, clearly. and unquestionably, the will itself, and the words, “or heard him acknowledge the same,” has reference to the same substantive, “the will.” In other words, it is the opinion of the court, with all due respect to the decision in the 56th Ohio St., page 424, as stated in the syllabus, that what our statute prescribes is the publication of the will in the presence of the attesting witnesses.
There is another point which should be remembered in seek *197 ing to ascertain what is decided in the case of Keyl et al v. Feuchter et al. Onr Supreme Court had already taken, years before, very decided ground upon what constitutes regular and legal attestation of the will. So full reference has been made to these prior decisions, that I need not make lengthy comment upon them.
In the ease of Raudebaugh et al v. Shelley et al, found in the 6th Ohio St., page 307, the Supreme Court has very liberally construed the statute requiring the due execution and attestation of wills in Ohio. In analyzing this statute, the Chief-Justice employs the following language:
“Three things were requisite to the due execution of this will:
“1st. That it should be in writing, and signed at the end thereof by the party making it, or by some other person in his presence, and by his express direction.
“2d. That it should have been attested and subscribed in the presence of the testator by two or more competent witnesses.
“3d. That the witness should have either seen the testator subscribe the paper, or heard him acknowledge the same.”
The irregularity of execution, complained of in this case is apparent from the further language of the Chief-Justice, which is as follows:
“Neither of the witnesses saw the testator subscribe his name to the paper; one of them, however, heard him expressly acknowledge the same, but the other did not. And the question is presented whether the'will is to be invalidated because the testator having subscribed the will in the absence of the witness, did not in express and direct language say to the witness that he had executed it, or signed it as his last will and testament. It appears that the witness was called in to attest the paper without being informed expressly that the instrument was a will; and' upon the paper being presented to him by the testator, with his (the testator’s) name written at the end of it, he subscribed his name as a witness at the testator’s request.
“It was not essential to the attestation that the witness should have been made acquainted with the particular contents of the instrument. Where an attesting witness does not see the testator subscribe his name to the will, the law requires that he should hear the testator acknowledge the fact of his having subscribed it. This .acknowledgment is not required to be *198 made in any particular words, or in any particular manner. If by signs, motions, conduct, or attending circumstances, the attesting witness was given to understand that the testator had already subscribed the paper as his will, it was a sufficient acknowledgment. And it was competent to show this fact by the circumstances attending the transaction, as well as by the words of the testator. Whether, in this case, the testator did substantially, and in effect, acknowledge, or give this attesting ■witness to understand that he had put his signature to the paper as Ms will, was a question of fact for the jury to pass upon; and we do not discover any material error in the instructions of the court to the jury; and, on the state of the evidence as it appears in the bill of exceptions, we do not think that the court erred in refusing to set aside the verdict, and grant a new trial on the ground of insufficiency of evidence. ’ ’
The rule laid down in this case, as to what constitutes due subscription and attestation, was amplified and reinforced in the decision cited by counsel of Haynes v. Haynes, 33 O. St., page 598, which was decided as late as 1878. In this case it seems that the testator had not personally subscribed his will, but it had been subscribed by some other person, and the question was, whether there was sufficient proof made to warrant the regularity of subscription by this agency. The court say:
“Where a will has been signed for the testator by another person in his presence, and by his express direction, in the absence of the attesting witnesses, the acknowledgment of the fact by the testator in the hearing of the witnesses which is requisite, is not required to be made in any particular form of words, or any special manner, but if, by signs, motions, conduct, or attending circumstances, the attesting witnesses are given to understand by the testator that Tie acknowledges the signature thereto as his,'and the instrument itself as his will, it is sufficient. ’ ’
Further:
“The fact of such signing, and the authority to sign, when done in the absence of the attesting witesses, may be shown by the acknowledgment to the witnesses, or by other competent testimony, or may be presumed from the facts and circumstances of the ease.”
It is perfectly evident that the “acknowledgment of the signature,’ ’ as required in this decision is made prominent because *199 the subscription was by the hand of another than the hand of the testator himself.
If the Supreme Court, in 1897, in the case of Keyl et al v, Feuchter et al, 56 Ohio St., 424, intended to modify or overrule these decisions, they would certainly have so stated, but, on the contrary, they did not attempt to modify or overrule, but reaffirmed these decisions by referring thereto at the end of the decision, in support thereof.
It is a well settled doctrine of law that, where a case is to be determined by a pure legal rule, to be deduced from the interpretation of a statute, it is the duty of court to wisely discriminate, and keep constantly in view the particular facts constituting the cause -of action, or defense, to which the statute is applicable. There is another ancient doctrine of the law which has inhered in the administration of the common law in respect to wills from time immemorial. That maxim is, that the law abhors intestacy. No student can review that great body of judicial history in the administration of the law of wills, without being most forcibly impressed with the force and effect of this doctrine of. the saeredness and importance of the will as a dispositive instrument, in the settlement of estates. It is true, as suggested by counsel, that the right to make a will, by the owner of property, is not a natural or inherent right, but is founded upon municipal law. And it is true that in the mode of exercising this legal privilege, the statute prescribed must be substantially observed and followed. But it has never been a sound doctrine that these technical formalities and minute requirements in regard to forms, should be in every case literally complied with.
It was found in a very early day that the courts, in construing the statute in England, that a will should be signed at the foot or end thereof, had fallen into a too close and critical course of action to work out, in every ease, exact justice, and preserve the testamentary privilege. Consequently, fifteen or sixteen years after the enactment of the English Law of Wills, 1st Yictoria, Chapter 24, an amended statute was enacted, .defining the meaning of “signing at the foot or end.” The court may be pardoned for quoting this amendatory act. *200 It clearly illustrates the futility of attempting to follow, with literal, punctilious exactness in the interpretation of these formalities, the exact letter of the statute. The Parliament of England enacted the following:
“If the signature shall be so placed at, or after, or following or under, or beside, or opposite to, the end of the will, that it shall be apparent on the face of the will that the testator intended to give effect, by such signature, to the writing signed as his will, and that no such will shall be affected by the circumstances that the signature shall not follow or be immediately after the foot or end of the will, or by the circumstance that a blank space shall intervene between the concluding word and the signature, or by the circumstance that the signature shall be placed among the words of the testimonium clause, or of the clause of attestation, either with or without a blank space intervening, or shall follow, or be after, or under or beside the names of one or more of the subscribing witnesses, or by the circumstance that the signature shall be on a side or page or other portion of the paper or papers containing the will, whereon no clause or paragraph or disposing part of the will shall be written above the signature, or by the circumstance that there shall appear to be sufficient space on or at the bottom of the preceding side or page, or other portion of the same paper, on which the will is written, to contain the signature,” etc. (Underhill on the Law of Wills, par. 184.)
Now, in the case at bar, for the admission of Mrs. Nicholson’s will to probate, nothing more is required, according to our system of procedure, than that a fair prima facie case should be made. First, that the testatrix was of full age, of sound mind and memory and was free from restraint; and second, that the paper-writing propounded was in writing; third, is signed at the end thereof by her, and attested and subscribed in her presence by two or more competent witnesses who saw the testatrix subscribe, or hear her acknowledge the same. Upon all these points, the court is prevented from hearing any adverse testimony. The case rests entirely, therefore, upon thr testimony of the two attesting witnesses, and the circumstances which are brought into view through their testimony. This proceeding is in no sense adversary, but is entirely ex parte. The judgment of the probate court upon this application is, ir> *201 ao sense, conclusive, and thus viewing the legal attitude of the matter, it only remains to very briefly call attention to the facts established by the evidence.
One indubitable fact is conclusively shown: That Mrs. Arminda S. Nicholson intended to die testate, and not intestate. The strong testamentary disposition was manifested in the fact that this was at least the third attempt made to execute a will disposing of her affairs. She was at that period of life when the testamentary habit is very prevalent. Her estate was situated in such a way, and the objects of her bounty were so related to her estate and to her, and her disposition was such, in regard to the uses to which her property should be devoted, that in all these respects a testamentary disposition was preferable to the disposition which the law makes in the statutes of descent and distribution. There never was manifested a stronger intent in any ease to have her will operate in the distribution and settlement of her estate. She stated to these witnesses that she had “made some changes in her disposition, so that if anything should happen to her, at her age,” and possibly precarious condition of health, “there would be no confusion or disturbance in the administration of her estate.” What more could she have said which would have enlightened these attesting witnesses on the subject of the transaction that occurred at their house on the 6th of June, 1903? She took pains to call upon them for their services twice, the last time bringing this paper with her. These are strong points in favor of the fact that the witnesses understood, and Mrs. Nicholson most strenuously intended that what she did on that day should be operative in the settlement of her estate after her death.
Then I think, while it is not the duty of the court, on an application to probate a will, to undertake to construe it, nor, perhaps, to ascertain whether it is a rational, or officious and irrational disposition, it is not improper, I believe, to say that her own brothers, next of kin, are not forgotten in this vyill by any means. One of them, the eldest, I believe, is honored in her confidence by being made executor, and all of them, or their children, receive benefits under this will, the bulk of the estate being bequeathed to blood relatives.
*202 The final and vital question in this matter, and one upon which the court has had the most difficulty, is the question of whether this will was “signed at the end” by Arminda S. Nich-olson. She did no writing in the presence of these witnesses. They both testify that they did not observe her signature; that the paper writing was folded in such a way that they could not, without effort, see whether she had signed the paper or not. The manner in which she requested them to subscribe the paper was substantially as follows: They had signed some previous paper as a will, and on the supposition that they remembered that, she stated to them that she had made some changes in her disposition, and asked them again to sign “the paper.” They were both perfectly cognizant, and mentally apprehended the fact that they were subscribing and attesting a will, and not any other document. These witnesses, therefore, were in a proper frame of mind and apprehension to justify the fact of attestation. Her name is written at the end of this paper, but so placed as to be within a space in the printed attestation clause, immediately under a dotted line designed for the signature, and under a black line drawn across the paper over the printed form for the attestation clause. I have already stated that every word written with a pen in this paper, except the signatures and residences of the attesting witnesses, is in the handwriting of the testatrix, and her name following these words, “the foregoing instrument was signed by the said Arminda S. Niehol•son,” etc., is written in her own handwriting, and by every presumption of law was there at the time of the subscription .and attestation by these attesting witnesses.
It is a very frequent thing, according to my experience here, for persons signing papers which are partly printed on blank forms, to misunderstand the proper location for their signature. Oftentimes where a jurat is printed upon a form, the person signing the affidavit, or application, will sign where the officer’s signature should be, unless specially directed.
The result of my finding in this matter is not at all conclusive, and is not reached without grave doubt, but from this evidence, and from what the court conceives to be the proper conception •of the statutes and their interpretation by the Supreme Court, *203 the name of “Arminda S. Nicholson,” found in the attesting clause at the end of this will, was by her placed there, or was at least adopted by her as her signature at the time of the subscription and attestation of the instrument, and was in the same condition that it is now at the time of the subscription and attestation by the witnesses, and that they could have seen it if they had desired, as it was subject to their view and inspection. While they say the paper was folded in such a way that they did not see it, there was no attempt on the part of Mrs. Nicholson to exclude them from a view of her signature. And the matter of adopting the name already written by the testatrix as her signature is not without judicial authority. In Section 313 of'Schouler on Wills, I find the following language :
“Whatever the local position of the signature by statute permission, the true principle is, that it must have been placed there with the design of finally authenticating the instrument, no further signature on the maker’s part being contemplated. A name originally written without such final design may, it is true, have that final effect afterwards, by the testator’s subsequent adoption of the signature as his final one; and such would probably be presumed his intention if he acknowledged the instrument as his will to the attesting witnesses without alluding to any further act of signing.” (Schouler on Wills, paragraph 313; 1 Jarman on Wills, 79).
As a matter of course, if Mrs. Nicholson intended to make her signature and subscription to the will in the presence of these witnesses, and neglected or failed to do so by oversight, haste, or inadvertance, the will would not have been properly signed, but it would be a violent conclusion, and against the reasonable presumptions of fact, to say that, having taken the care and pains to go to a neighbor’s house, stating to them that she was fixing her affairs so that there should be no confusion if anything happened to her, and asking them to sign as witnesses, a paper, she intended afterwards to sign her name out of the presence of these witnesses, and especially would such conclusion be unreasonable in view of the fact that, for a long time afterwards, she sacredly preserved the paper, and it was found unchanged among her valuable documents after her death. As *204 has been well said in argument, it would be unreasonable to presume that a woman of the intelligence of Mrs. Nicholson would not suppose that a signature to her will was essential. For these reasons, as already stated, the sounder view is to conclude that Mrs. Nicholson had already signed the paper at the end of the will, but less than one-fourth of an inch below the place designed for the signature, intending to authenticate the will by her genuine signature. There is but little reason to doubt that she understood and intended that the manner in which the paper was dealt with at the residence of the witnesses, was the final and concluding act in the authentication of her will.
M. B. and H. H. Johnson, R. V. Sears, Charles K. Arter and Smith & Taft, for the proponents.
Thomas Beer and Cyrus Sears, for the protestants.
The court, therefore, in conclusion does find that, at the time of the execution of this will, the testatrix, Arminda S. Nicholson, was of full age, of sound mind and memory, and free from restraint, and that the paper writing dated the 6th day of June, 1903, was duly and legally subscribed and attested, executed and acknowledged, and is her last will and testament, and entitled to probate and record in this court.